# In the United States Court of Federal Claims

No. 19-1961C
Filed under seal: March 11, 2020
Reissued: March 23, 2020*

| | |
|---|---|
| **KIEWIT INFRASTRUCTURE WEST CO.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**UNITED STATES,**<br><br>*Defendant.* | Keywords: Pre-Award Bid Protest; Invitation for Bids; Cancellation; Compelling Reason; Arbitrary and Capricious |

*Douglas L. Patin* with *Aron C. Beezley*, *Patrick R. Quigley*, and *Lisa A. Markman*, of counsel, Bradley Arant Boult Cummings LLP, Washington, D.C., for the plaintiff.

*Galina Fomenkova*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendant, with whom were *Stephen M. Hernandez*, Contract and Fiscal Law Division, U.S. Army Legal Services Agency, and *Robert Goodin*, Contract Law Branch, Office of the Chief Counsel, National Guard Bureau.

## MEMORANDUM OPINION

**HERTLING**, Judge

In this pre-award bid protest, Kiewit Infrastructure West Company ("Kiewit") challenges the actions of the United States, acting through the Department of Defense's National Guard Bureau (the "Agency") related to an invitation for bids ("IFB") to replace an aircraft ramp at an airbase in Klamath Falls, Oregon. The Agency received two sealed bids and publicly opened them, revealing Kiewit's bid as the lowest priced. After the bids had been unsealed, the contracting officer issued amendments that purported to cancel the IFB, convert it to a negotiated procurement under the Federal Acquisition Regulations ("FAR") Part 15, and request revised price proposals. The contracting officer's Determination and Findings ("D&F") justified the cancellation on the basis that both bids were unreasonably priced. The D&F made no reference to the contracting officer's earlier Memorandum for Record ("MFR") that had reached the

---

* Pursuant to the protective order in this case, the Court initially filed this opinion under seal for the parties to propose redactions of confidential or proprietary information. The resulting redactions appear as asterisks enclosed in brackets, *e.g.*, "[***]."

opposite conclusion. Kiewit challenges the Agency's cancellation of the IFB and its purported conversion to a Request for Proposals as arbitrary, capricious, or contrary to law.

The governing FAR provision requires a "compelling reason" to cancel an IFB after sealed bids have been opened. This requirement sets a meaningful standard that the D&F's reasoning, in light of its internal and external contradictions, failed to meet. The Court declares the August 22, 2019, cancellation of the IFB invalid and enjoins the Agency from awarding the contract in reliance on that cancellation.

## I.     BACKGROUND

### A.     The IFB and Bid-Opening

In April 2019, the Agency issued an IFB seeking bids for a firm fixed-price contract under FAR Part 14 to replace an aircraft ramp in Klamath Falls, Oregon. (AR 77.)[1] The IFB gave a preference to HUBZone small businesses. (AR 86 (incorporating FAR 52.219-4).) Before bids were due, the Agency received and responded to five Requests for Information ("RFIs"), including two from Kiewit. The Agency's responses clarified the quantity of contaminated soil and groundwater disposal that the bidders should include in their bids.

Kiewit submitted a sealed bid. The Agency received only one other bid, from Bidder B.

On June 13, 2019, the Agency opened the bids. Kiewit bid $38,875,500, and Bidder B bid $43,973,034. Even considering the 10% preference afforded to Bidder B as a HUBZone small business, Kiewit's bid was the lowest priced.

That same day, the Agency disclosed that its Independent Government Cost Estimate ("IGCE") was $27,016,699. (AR 1730-31.)

### B.     Post-Opening Correspondence and Memorandum for Record

After opening the bids, the Agency began determining Kiewit's responsibility as required under FAR 14.408-1(a)(3). On June 21, 2019, the Agency requested and received Kiewit's bank information "to verify contractor responsibility as is required by statute." (AR 1751, 1753.) On June 25, the Agency determined that Kiewit was a responsible bidder. (AR 1739.)

On July 8, the Agency requested the allocation of $38,875,500 of funding for the project no later than August 7. (AR 1740.) On July 18, these funds were certified as "available and committed." (*Id.*) A contracting officer ("Contracting Officer 1") notified Kiewit that these funds were available when he asked for Kiewit's tax identification number on July 22, writing,

---

[1] Citations to the administrative record submitted by the Agency (ECF 20) are abbreviated "AR."

"[w]e finally received funding and are working on getting the award through the review/approval process. We are shooting for award NLT end of August!" (AR 1754.)

Another contracting officer ("Contracting Officer 2") signed a MFR on July 24 finding that Kiewit's bid price was "fair and reasonable based on competition." (AR 1742.) The MFR noted that "[t]he bids were significantly higher than the [IGCE]." (*Id.*) It also noted, however, that "[w]hen comparing the bids to each other, the bids were in a competitive arena." (AR 1742.) There is no indication from the record that this MFR was shared outside the Agency.

On July 25, Contracting Officer 1 sent Kiewit "Pre[-]Award Documents" for Kiewit to complete "[a]s soon as possible." (AR 1764.) Kiewit returned the completed documents on August 9. Kiewit's email transmitting the document back to the Agency noted "look forward to working with the Department of the Air Force to repair the maintenance ramp at Kingsley Field." (AR 1764.)

On August 15, Kiewit emailed Contracting Officer 1 to confirm that he had received Kiewit's "Pre-Award Submittal." AR 1766. Contracting Officer 1 responded on August 19, writing only "Got it."

On August 21, Kiewit's new operations manager for the project emailed Contracting Officer 1 to introduce himself and propose a meeting to discuss the project, "specifically the airfield operations access needs." (AR 1768.). Contracting Officer 1 replied 40 minutes later, writing "Stand by. We ran into a snag with price reasonableness with NGB. We are working a way forward." (AR 1768.)

### C.   Cancellation of the IFB

On August 23, 2019, Contracting Officer 1 emailed Amendment 001 to Kiewit. (AR 1770.) The Amendment provided, "[i]n accordance with FAR 14.404-1, the invitation for bids has been cancelled and the acquisition will be completed via this solicitation through negotiation in accordance with FAR Part 15." (AR 1701.) It continued, "[a]ward will be made to the responsible bidder offering the lowest negotiated price." (*Id.*) The Amendment explained that a forthcoming amendment would "request a price proposal," and invited the bidders to signal their intent to enter into negotiations by acknowledging Amendment 001. (*Id.*) Kiewit acknowledged Amendment 001 the next day.

The Agency prepared a D&F justifying its cancellation of the IFB and its decision to convert the IFB into a negotiated procurement through Amendment 001. (AR 1743-45.) The D&F recapitulated the timeline of the procurement, discussed "the disparity in bids received compared with the [IGCE]," and quoted FAR 14.404-1(c) as the standard for cancellation of an IFB before award but after bid-opening. It then concluded, "[t]he contracting officer has determined that none of the prices received in response to this invitation for bids were reasonable *in comparison with the Government's estimate and in comparison with each other*." (AR 1745 (emphasis added).)

3

The D&F's discussion of the disparity between the bid prices received and the IGCE, which preceded its final conclusion, consisted of the following:

> 11.  Due to the large disparity in bids received compared with the Government's estimate, it is not possible to determine the prices received to be fair and reasonable.  Also, due to the lack of acknowledgment of the RFIs from the low bidder, it is unknown if any of the RFIs, if incorporated into the solicitation by formal amendment, would have affected the price offered by the low bidder.
>
> 12.  The Architect-Engineer (A-E) contractor was consulted to determine whether or not the IGE was flawed in any way or if they can shed light on why the bids were so much higher than the IGE.  The discrepancy between the IGE and the bids is largely based on the logistical aspects of the project and the magnitude of the scope.  The A-E firm cited three possible reasons for the discrepancy between the bids and the IGE:
>
>> a.  [***]
>>
>> b.  [***]
>>
>> c.  [***]

(AR 1745.)  The "three possible reasons for the discrepancy" are not addressed anywhere else in the D&F.

The D&F's signature page and final page indicate that it was prepared by Contracting Officer 2 and signed by a staff judge advocate and the Agency compliance chief in the two days preceding the issuance of Amendment 001.  (*Id.*)

### D.    Request for Revised Proposals

On August 28, 2019, Contracting Officer 1 emailed Amendment 002 (AR 1703-27) to Kiewit and noted that September 6 was the due date for proposals.  (AR 1774.)  Amendment 002 requested revised proposals, separated work that had been the subject of the RFIs into two new contract line-items, deleted Section 010000, and added a current wage determination, an updated bid schedule, and various other contract clauses.[2]

---

[2] The added clauses were FAR 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns; FAR 52.204-25, Prohibition on Contracting for Certain Telecommunications and Video Surveillance Services or Equipment; FAR 52.215-2, Audio and Records—Negotiation; FAR 52.215-20, Requirements for Certified Cost or Pricing Data or Information Other Than Certified Cost or Pricing Data; and FAR 52.211-18, Variation in Estimated Quantity.

Early on August 30, Contracting Officer 1 emailed a Kiewit manager requesting a call when the manager arrived in the office. (AR 1776.) Nine minutes later, Contracting Officer 1, without referencing his earlier message, sent the Kiewit manager Amendment 003, noting, "[p]lease see attached amendment [00]3 to clarify FAR Clause 52.211-18 Variation in estimated quantity." (AR 1778.)

Amendment 003 provided, in full, "[t]his amendment is to clarify that FAR Clause 52.211-16 is not applicable to this procurement. FAR Clause 52.211-18 Variation in Estimated Quantity is applicable to CLINs 009 and 0010." (AR 1728-29.)

### E.   GAO Protest and Bidder B's Revised Offer

On September 3, 2019, Kiewit protested the Agency's decision to cancel the IFB to the Government Accountability Office ("GAO"), arguing that the Agency lacked a compelling reason to cancel the IFB. The next day, Kiewit wrote the Agency explaining why Kiewit believed its bid was reasonable and why it would not be submitting an offer in response to the Agency's revised solicitation. (AR 1797-1818.)

The due date for offers in response to the revised IFB was September 6 (AR 1701), and Bidder B submitted a revised offer of [***]. (AR 1821-22.) This offer was [***] above the IGCE, and only [***] than Kiewit's original bid. Kiewit did not submit a revised offer.

On September 13, Kiewit filed a supplemental protest with the GAO. Kiewit argued that the Agency's determination that Kiewit's price was unreasonable was itself unreasonable because the Agency failed to examine Kiewit's proposed price, the IGCE was flawed, the Agency had unreasonably reversed itself on the reasonableness of Kiewit's bid price, and the negotiated procurement constituted an "illegal auction." (AR 2010-17, 2063-79.)

On December 10, the GAO denied Kiewit's protest. Without addressing the effect of the contradiction between the Agency's earlier MFR and the later D&F on the reasonableness of the bid prices, the GAO concluded that the agency's determination that all prices received were unreasonable was a sufficiently compelling reason to cancel an IFB after bid opening. The GAO noted that the contracting officer had made a "preliminary" finding that Kiewit's bid was reasonable, but that the agency revisited the question and concluded, upon reflection, that the two bids were not reasonably priced. (*See* AR 2105.) The GAO specifically rejected Kiewit's asserted flaws in the IGCE as "effectively refute[d]" by Kiewit's own bid-preparation materials. (AR 2106-07.) The GAO rejected Kiewit's challenge to the follow-on negotiated procurement because Kiewit, which did not submit a revised offer, was "not an interested party to advance" that challenge. (AR 2108.)

On December 27, Kiewit sought injunctive relief against the Agency's cancellation in this Court. The parties have cross-moved for judgment on the administrative record, and the Court heard oral argument on February 27, 2020.

## II. JURISDICTION AND STANDING

This Court has jurisdiction over bid protests pursuant to 28 U.S.C. § 1491(b). *See, e.g.*, *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005).

To have standing to protest, a plaintiff must demonstrate that it is an "interested party" who suffered prejudice from a significant procurement error, and but for that error, "it would have had a substantial chance of securing the contract." *See CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358 (Fed. Cir. 2018). In a pre-award bid protest such as this one, an interested party is "'(1) an actual or prospective bidder, . . . (2) that [] has a direct economic interest.'" *CGI Fed. Inc. v. United States*, 779 F.3d 1346, 1348 (Fed. Cir. 2015) (quoting *Digitalis Educ. Solutions, Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012)). Kiewit alleges that but for the Agency's improper cancellation of the IFB, it would have received the contract because it was the low-priced bidder. Kiewit's standing is not contested. Kiewit is an interested party with standing to maintain this action.

## III. STANDARD OF REVIEW

In a Motion for Judgment on the Administrative Record pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"), "'the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" *Integral Consulting Servs., Inc. v. United States*, 140 Fed. Cl. 653, 657 (2018) (quoting *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006)). Under RCFC 52.1, the review is limited to the administrative record, and the Court makes findings of fact as if it were conducting a trial on a paper record. *See Bannum, Inc.*, 404 F.3d at 1354. The Court must determine whether a party has met its burden of proof based on the evidence contained within the administrative record. *Id.* at 1355.

The Court evaluates bid protests under the Administrative Procedure Act's standard of review of agency action. 28 U.S.C. § 1491(b); *Bannum, Inc.*, 404 F.3d at 1351. An agency procurement action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A). Agencies and their contracting officers are "'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (quoting *Latecoere Int'l, Inc. v. U.S. Dep't of the Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)). Accordingly, the Court's review of a procuring agency's decision is "highly deferential." *Advanced Data Concepts v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).

To prevail in a bid protest, the protester must show first, "a significant error in the procurement process[,]" and second, "that the error prejudiced it." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996); *see also Bannum*, 404 F.3d at 1351 ("First . . . the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract. Second . . . [the trial court] proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct."). When a protester alleges that the agency violated a law or regulation, the Court reviews that claim under the test

articulated in *Data General Corporation* and *Bannum*. *See Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (protester alleging violation of law must show a "clear and prejudicial violation of applicable statutes or regulations" such that the protestor had a "substantial chance" of receiving the award but for that error).

## IV.  ANALYSIS

Kiewit alleges that the Agency rationale for cancelling the IFB was arbitrary on its face because it failed to account for the Agency's earlier determination that Kiewit's price was reasonable. The Agency responds that the cancellation complied with the requirements of FAR 14.404-1 and argues that the FAR does not prohibit it from changing its mind before award. The Court holds that the cancellation was contrary to law because the Agency failed to establish its finding of unreasonable pricing as "a compelling reason" for cancellation under FAR 14.404-1(a)(1). Accordingly, finding that the balance of harms weighs in Kiewit's favor, the Court grants limited injunctive relief by setting side the cancellation as invalid and enjoining any award of the contract that would rely on that cancellation.

### A.  Cancellation of the IFB

After an agency opens sealed bids, FAR 14.404-1 narrows an agency's otherwise broad discretion to cancel a procurement. Subsection (c) of that provision lists ten written determinations that may support cancelling an IFB after bid-opening, but requires that such determinations be "consistent with paragraph (a)(1)." Paragraph (a)(1) requires "a compelling reason" to cancel an IFB. In this case, the D&F recited paragraph (c)(6)'s price reasonableness ground for cancellation. That price reasonableness determination, however, was not "a compelling reason" to cancel the IFB under paragraph (a)(1) because it accounted for neither the earlier, opposite finding reached in the MFR nor the D&F's unresolved questions about the accuracy of the IGCE.

#### 1.  Compelling Reason Required

FAR 14.404-1 starts by mandating award to the low bidder. The provision provides a narrow exception allowing the cancellation of an IFB after bid-opening, but it still underscores the need to preserve the "integrity of the competitive bid system." FAR 14.404-1(a)(1). FAR 14.404-1(a)(1) provides:

> Preservation of the integrity of the competitive bid system dictates that, after bids have been opened, award *must* be made to that responsible bidder who submitted the lowest responsive bid, *unless there is a compelling reason* to reject all bids and cancel the invitation.

48 C.F.R. § 14.404-1(a)(1) (emphasis added).

Paragraph (a)(1) explicitly requires "a compelling reason" to cancel an IFB after bid-opening. Bid protest decisions from both this Court and the GAO illustrate the policy reasoning behind this requirement: After bid-opening has exposed the low-bidder's price, allowing an

agency to request new offers would allow the losing bidders to undercut the low bidder, and unfairly force the low bidder to compete with itself.  *See Overstreet Elec. Co., Inc. v. United States*, 47 Fed. Cl. 728, 732 (2000); *California Marine Cleaning, Inc. v. United States*, 42 Fed. Cl. 281, 292 (1998) (characterizing the original low bid as a "sitting duck" or "target[]" for competitors to beat when new offers are solicited after bid-opening); *Dyneteria, Inc.*, B-210684, 84-1 C.P.D. ¶ 10 at 4 (Dec. 21, 1983); *Twehous Excavating Co.*, B-208189, 83-1 C.P.D. ¶ 42 at 4 (Jan. 17, 1983) (finding an "auction situation" that undermined the "integrity of the competitive system"); *see also Pro-Fab, Inc.*, B-243607, 91-2 C.P.D. ¶ 128 at 3 (Aug. 5, 1991) (contrasting the ordinary "reasonable basis" standard for canceling a procurement with the "compelling reason" standard needed to cancel an IFB after bid-opening).

Subsection (c) of FAR 14.404-1 specifies the procedure for IFB cancellation, providing that "[i]nvitations may be cancelled and all bids rejected before award but after opening when, *consistent with paragraph (a)(1)* above, the agency head determines in writing that" at least one of the conditions listed in paragraphs (1) through (10) is satisfied.  FAR 14.404-1(c) (emphasis added).  One such condition is that "[a]ll otherwise acceptable bids received are at unreasonable prices."[3]  FAR 14.404-1(c)(6).

The phrase "consistent with paragraph (a)(1)" subordinates subsection (c)'s listed determinations that can support cancellation to the compelling-reason requirement of paragraph (a)(1).  In this context, the phrase "consistent with" followed by the cross-reference to another part of the FAR provision resembles the use of the phrase "subject to" when followed by a cross-reference to another provision in a statute.  *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 126-28 (2012) (recognizing a semantic canon of construction triggered by certain subordinating or superordinating language followed by a reference to another provision).  In many statutes, the phrase "subject to" denotes that the referenced provision should prevail in a clash with the referencing provision.  *Id.*  Here, the phrase "consistent with," although not as specific as the phrase "subject to," nevertheless

---

[3] The other nine conditions are: "(1) Inadequate or ambiguous specifications were cited in the invitation; (2) Specifications have been revised; (3) The supplies or services being contracted for are no longer required; (4) The invitation did not provide for consideration of all factors of cost to the Government, such as cost of transporting Government-furnished property to bidders' plants; (5) Bids received indicate that the needs of the Government can be satisfied by a less expensive article differing from that for which the bids were invited; . . . (7) The bids were not independently arrived at in open competition, were collusive, or were submitted in bad faith (see subpart 3.3 for reports to be made to the Department of Justice); (8) No responsive bid has been received from a responsible bidder.  (9) A cost comparison as prescribed in OMB Circular A–76 and subpart 7.3 shows that performance by the Government is more economical; or (10) For other reasons, cancellation is clearly in the public's interest."

performs the same subordinating function.[4]  In a clash between subsection (c) and paragraph (a)(1), paragraph (a)(1)'s compelling-reason requirement must prevail.

In *California Marine Cleaning, Inc. v. United States*, this court recognized just such a clash when it held the Navy's determination that cancelling an IFB was "clearly in the public interest," under (c)(10), was not "a compelling reason" to cancel an IFB, under (a)(1). 42 Fed. Cl. at 281.  In that case, this court recognized that paragraph (a)(1)'s reference to "a compelling reason" "appears to codify a judicially-created standard established by the Court of Claims" that recognized that the firmness of the bids was dependent on a rule that did not allow the bids to be exposed to competitors and then discarded "except for cogent reasons." *Id.* at 292 (quoting *Massman Constr. Co. v. United States,* 102 Ct. Cl. 699, 719, *cert. denied,* 325 U.S. 866 (1945)).

The court in *California Marine Cleaning* noted that, without applying the compelling-reason requirement to (c)(10), the standard for cancellation before bid-opening and after bid-opening would functionally be the same.  *Id.* at 293 (quoting 48 C.F.R. § 14.209(a)) ("FAR 14.209(a) permits an agency to cancel an IFB prior to bid opening without a compelling reason; it simply requires that the agency determine that cancellation is 'clearly in the public interest.'  In contrast, FAR 14.404–1 requires *in addition* that the agency has a compelling reason for cancellation.") (emphasis added).

In this case, the Agency proposes an alternate interpretation of FAR 14.404-1.  It argues that subsection (c) provides a list of *per se* compelling reasons to cancel an IFB, and the list expressly includes unreasonable pricing.  Thus, the Agency concludes, its finding of unreasonable pricing in the D&F should be reviewed as an exercise of its broad discretion to determine price reasonableness, not for whether it is "compelling."  *See Caddell Constr. Co. v. United States*, 7 Cl. Ct. 236, 241 (1985) ("A determination concerning the unreasonableness of the prices bid is a matter of administrative discretion which should not be questioned unless the determination is shown to be unreasonable or that there is a showing of fraud or bad faith.").

---

[4] The phrase "consistent with" could support a non-subordinating interpretation.  In this context, "consistent with" could be illustrative, parenthetically noting that the requirement for a written determination is itself consistent with paragraph (a)(1)'s policy rationale regarding "preservation of the competitive bid system."  That interpretation, however, breaks from other FAR provisions that use "consistent with" in a manner indistinguishable from "subject to," to limit the surrounding provision when it clashes with a referenced provision or standard.  *See, e.g.*, 48 C.F.R. § 9.406-3 ("Agencies shall establish procedures governing the debarment decisionmaking process that are as informal as is practicable, *consistent with* principles of fundamental fairness.") (emphasis added); 48 C.F.R. § 52.219-8 ("Small disadvantaged business concern, *consistent with* 13 CFR 124.1002, means a small business concern under the size standard applicable to the acquisition, that . . . .").

Interpreting FAR 14.404-1(c) as not limited by paragraph (a)(1), however, reads "compelling" out of the cancellation provision. It either renders the word superfluous or treats (a)(1)'s reference to "a compelling reason" as shorthand for "the below-listed reasons," referring to the list in paragraphs (c)(1) through (c)(10). The Court's task in interpreting the provision is to give effect to the provision as a whole and to each of its elements. *See Obduskey v. McCarthy & Holthus LLP*, 586 U.S. --, 139 S. Ct. 1029, 1037 (2019). The Court will not read the provision in a way that ignores the subordinating effect of the phrase "consistent with paragraph (a)(1)" and renders it meaningless surplusage.[5]

The Agency's finding—after bid-opening—that all bid prices received were unreasonable must be consistent with paragraph (a)(1)'s compelling-reason requirement to be sufficient to cancel the IFB.

### 2.     The Reason Was Not Compelling

The D&F's conclusion that all otherwise responsive bids were received at unreasonable prices is not compelling because the D&F simply restated FAR 14.404-1(c)(6) as justification for the rejection without any meaningful analysis and without an express rejection of the Agency's earlier, opposite determination. Moreover, it raised unresolved questions about the accuracy of the IGCE, but then relied on the IGCE as a measure of price reasonableness.

On review, the compelling-reason requirement tests the sufficiency of the agency's reasoning. Some GAO bid protest decisions treat "compelling" as a substantive standard, suggesting that only prejudice to other bidders and a failure to meet the government's needs are sufficient to justify cancellation after bid-opening. *See Canadian Commercial Corp.*, B-255642, 94–1 C.P.D. ¶ 202 at 4 (1994); *see also Dyneteria, Inc.*, 84–1 C.P.D. ¶ 10 at 4; *Twehous Excavating Co.*, 83–1 C.P.D. ¶ 42 at 4. Such a substantive definition of "compelling," however, is difficult to reconcile with FAR 14.404-1(c)'s enumeration of substantive determinations, such as unreasonable pricing, that may support cancellation after bid-opening. In *California Marine Cleaning*, this court applied "compelling" as a procedural or evidentiary standard to test the sufficiency of the reasoning behind the agency's ultimate conclusion that it was "restoring the integrity of the bid system." 42 Fed. Cl. at 293; *see, e.g.*, *id.* at 296 ("To the extent that the Navy relied on [an irrational GAO] decision, therefore, the agency decision did not state a compelling reason for canceling the [IFB]."). Indeed, the application of "compelling" to test the sufficiency of the agency's reasoning rather than the substance of its determination is consistent with the requirement from the Federal Circuit's predecessor court for a "cogent" reason for cancellation in *Massman Construction Co. v. United States*. 102 Ct. Cl. at 719.

The facts of this case are clear enough that they do not require the Court to define exactly what suffices as a compelling reason, while allowing the Court to conclude with confidence what is not a compelling reason. When the record shows that an agency has reached opposite

---

[5] When the D&F attempted to recite the legal standard for cancellation it actually omitted—without using ellipses or brackets—the phrase "consistent with paragraph (a)(1)." (AR 1745.)

conclusions from the same set of facts, the agency must go beyond reciting FAR provisions and explain how the same facts led to opposite conclusions before its reasoning for either conclusion can be considered "compelling."

The D&F's failure to explain certain contradictions, within itself and within the record, prevent it from establishing unreasonable pricing as a compelling reason for cancelling the IFB. The D&F's conclusion is contradicted by the MFR, which reached the opposite conclusion as to whether Kiewit's bid was reasonably priced. Both determinations purported to compare the bids to each other and both noted the discrepancy between Kiewit's bid and the IGCE. The D&F used comparison of the bids and their discrepancy with the IGCE to support its conclusion that all bids were unreasonably priced. The earlier MFR noted the same facts, but reached the opposite conclusion. The D&F neither accounted for the MFR's opposite conclusion that all bids were reasonably priced, nor mentioned any additional facts that might have caused the contracting officer to change his mind. Indeed, the D&F never once even acknowledged the MFR or its contrary conclusion.

The D&F's conclusion is further contradicted by the unresolved doubts it raised about the accuracy of the IGCE. The D&F articulated three possible explanations suggested by the project's architect-engineer for the disparity between the bids and the IGCE. The D&F's conclusion that the bids were unreasonably priced could not be compelling without discounting or quantifying the effect of those alternative explanations on the disparity between the bids and the IGCE. After reciting the three possible explanations for the disparity between the IGCE and the bid prices, however, the D&F does not analyze, accept, reject, distinguish, explain away, or indeed do anything at all with them. Instead, it uses the disparity as support for its conclusion that all of the bid prices received were unreasonable.

In light of these external and internal inconsistencies in the D&F, the Court finds that the D&F's price-reasonableness determination, although consistent with FAR 14.404-1(c)(6)'s provision of price reasonableness as a possible ground for cancellation, was not consistent with paragraph (a)(1)'s compelling-reason requirement.

The Agency raises several counterarguments to Kiewit's allegation that the D&F was arbitrary or capricious. Although the Court does not decide here whether the D&F was arbitrary or capricious, but only that it did not establish "a compelling reason" to cancel the IFB and was, therefore, contrary to law, the Court addresses the Agency's counterarguments relevant to the sufficiency of the D&F's reasoning.

The Agency argues that the D&F's reasoning was not arbitrary or capricious because it was sufficient that the Agency's path could be "reasonably discerned" from the D&F. The Court disagrees because it cannot discern the Agency's *path* from the D&F. The Court can only discern the Agency's positions from the MFR and the D&F. The Agency's so-called "path" or the line of reasoning connecting those two positions—explaining why the D&F is "compelling" despite the MFR's earlier, opposite conclusion—is the element that is missing from the D&F.

The Agency further argues that Contracting Officer 2's statement, filed in Kiewit's bid protest to the GAO (AR 18-24) and, therefore, part of the administrative record in this matter,

provides sufficient explanation for the Agency's reversal.  The Court rejects Contracting Officer 2's *post hoc* explanation to the GAO as not probative of the Agency's reasoning when it cancelled the IFB.  In rejecting the probative value of Contracting Officer 2's statement to the GAO, the Court relies on the "settled proposition[]" that "in reviewing agency action, a court is ordinarily limited to evaluating the agency's *contemporaneous* explanation in light of the existing administrative record."  *Dep't of Commerce v. New York*, 588 U.S. --, 139 S. Ct. 2551, 2573 (2019) (emphasis added); *see also PricewaterhouseCoopers Pub. Sector, LLP v. United States*, 126 Fed. Cl. 328, 355 n.11 (2016) (quoting *FFL Pro LLC v. United States*, 124 Fed.Cl. 536, 556 n. 17 (2015)) (observing that neither the GAO nor this court must credit an agency's "'postdecisional documents included in an administrative record'").

Even if the Court were to accept Contracting Officer 2's statement to GAO as probative, the contracting officer's unelaborated and unexplained reference to "conducting the appropriate due diligence" and "discussing internally" would not make the D&F's conclusion compelling in light of the MFR's earlier, opposite conclusion.  (*See* AR 19.)  Merely noting that the agency found additional facts or reasons would not make the D&F compelling without explaining what the new facts or reasons and their relevance were.

At argument, Agency counsel worked to dismiss the MFR's probative value as part of the record, characterizing it as a "preliminary" determination.  The Court finds no factual basis for that characterization.  Nothing in the MFR's title or contents marked it as preliminary, a draft, or contemplated a more "final" price reasonableness determination.  While Agency counsel's strategic reason for repeatedly characterizing the MFR as merely "preliminary" is clear, the *factual basis* for doing so is not.

* * *

The Court emphasizes the narrowness of its holding.  The D&F's conclusion is not compelling because the D&F simply restated FAR 14.404-1(c)(6) as justification for the rejection without any meaningful analysis and without acknowledging and explaining its rejection of the Agency's earlier, contrary determination.  Moreover, the D&F raised unresolved questions about the accuracy of the IGCE,  but then relied on the IGCE as a measure of price reasonableness.  The D&F's external and internal contradictions undermine its conclusion that all bid prices received were unreasonable.  The Agency's use of that conclusion as the reason to cancel the IFB violated FAR 14.404-1(a)(1)'s compelling-reason requirement.

This regulatory violation was a "significant error in the procurement process" that prejudiced Kiewit.  The record reflects that the Agency found Kiewit responsible and had allocated funding in the amount of Kiewit's bid.  With those preconditions met, Kiewit—as the lowest-priced bidder—would have won the contract if the agency had not cancelled the IFB.  Accordingly, the agency's violation of FAR 14.404-1 in cancelling the IFB prejudiced Kiewit.

### B. Injunctive Relief

Kiewit has urged the Court to direct the Agency to abide by FAR 14.404-1(a)(1) and award the contract to it as the low bidder, or to provide lesser included relief. The Court declines to award the contract to Kiewit, but finds that a more limited injunction is appropriate here.

The Tucker Act expressly empowers the Court in a bid protest to award "any relief that the court considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2). The plaintiff must show four factors by a preponderance of the evidence for permanent injunctive relief to be appropriate:

> whether (1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief.

*Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). Kiewit has met the first factor by succeeding on the merits.

As to the second factor, irreparable harm exists when an offeror has lost the opportunity to compete fairly for a contract. *HP Enter. Servs., LLC v. United States*, 104 Fed. Cl. 230, 245 (2012). Moreover, when procurement decisions contrary to law deprive an offeror of the opportunity to compete for a contract, the resulting lost profits are sufficient to constitute irreparable injury. *MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 552 (2011). Kiewit has shown that it will suffer both the monetary harm of lost profits and non-monetary harm of a lost opportunity to compete on an even playing-field that would be irreparable if the invalid cancellation is not set aside. The second factor is also met.

As to the balance of hardships, the Agency argues that further delaying its procurement beyond April 2020 may delay the repair of the aircraft ramp by another year, due to the end of the local construction season. (ECF 24 at 37.) On the other hand, Kiewit argues that the Agency can recalculate its IGCE and still award the contract by April 2020. (ECF 28 at 21.) Regardless, Kiewit argues that any delay is of the Agency's own making because the Agency accepted this risk when it opted for a phased construction schedule instead of relocating flight operations. (ECF 28 at 22.) While the Agency's reply to Kiewit's arguments explained aspects of the "direct impact" it might suffer were the procurement to extend beyond April 2020, the Court finds that the balance of hardships favors granting the limited permanent injunctive relief of setting aside the Agency's invalid cancellation of the IFB.

Finally, the public interest is best served by maintaining the integrity of the bidding process and enjoining any award based on the invalid cancellation of an IFB. *See Great Lakes Dredge & Dock Co. v. United States*, 60 Fed. Cl. 350, 370 (2004). An "attempt to cancel the IFB without a compelling reason violates FAR § 14.404-1 and undermines the integrity of the procurement process. Granting an injunction setting aside the improper cancellation serves the public interest." *Id.* (citation omitted).

Because all four factors support injunctive relief in this protest, the cancellation must be set aside as invalid and any award based on the invalid cancellation must be enjoined.

## V.     CONCLUSION

The Court will enter an order DENYING the defendant's motion for judgment on the administrative record, GRANTING the plaintiff's motion for judgment on the administrative record, SETTING ASIDE as invalid the defendant's cancellation of all bids for solicitation W912JV19B7001, and ENJOINING the defendant from relying on the invalid cancellation to award the contract.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**
